CATHERINE M. CANNON, Appellant, v. JOSEPHINE ELIZA SARES and Others, as Executrices, etc., of MARY LOUISE SMITH, Deceased, Respondents.

First Department, April 5, 1917.

Decedent's estate — action to recover for services rendered to decedent — evidence raising question for jury.

Action against an estate brought to enforce an alleged contract to pay for services rendered by the plaintiff as a nurse and personal attendant of the testatrix.  It appeared that the decedent, an aged woman who lived in a boarding house conducted by plaintiff's sister, was afflicted with a malady requiring constant and arduous attendance and that the plaintiff for a long period of time had rendered this service under extremely unpleasant conditions.  Evidence examined, and *held*, sufficient to require the submission of the case to the jury.

CLARKE, P. J., and LAUGHLIN, J., dissented, with opinion.

APPEAL by the plaintiff, Catherine M. Cannon, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 5th day of October, 1916, upon a dismissal of the complaint by direction of the court at the close of plaintiff's case.

*Guernsey Price*, for the appellant.

*John J. Crawford*, for the respondents.

SHEARN, J.:

The complaint alleges a contract by the decedent to pay plaintiff for sixty-one months' services as a nurse and personal attendant from 1909 to 1915, on the basis of fifty dollars per month as the reasonable value of the services.  During the trial plaintiff reduced her claim to forty-nine months.  This

reduction was necessary because it developed during the trial that for a year and a half prior to the death of decedent, pursuant to an agreement with decedent's family physician, plaintiff had been paid by him in the behalf of the decedent for the value of her services during such year and a half. Such payment was at the rate of fifty dollars per month.

The decedent was a woman about eighty years of age, who boarded in a boarding house conducted by plaintiff's sister. She paid fifty dollars a week for her rooms and board, the price including service of meals in her room. The decedent was a very heavy woman, weighing over 200 pounds, and was in such feeble condition as to require constant help and attention. She could not dress herself or get out of bed herself without assistance. She was suffering from hemorrhoids and was in constant need of the attention of a nurse. At one time, for a few weeks, a trained nurse was employed, but decedent's physician decided to go back to the services of the plaintiff, because plaintiff was used to the ways of the decedent and got along better with her than did strangers. It was established by entirely satisfactory and overwhelming evidence that plaintiff rendered the decedent constant and arduous services during the entire period in question, some of an extremely unpleasant nature, and was paid nothing except during the last year and a half. But for the fact that we are dealing with the estate of a decedent the plaintiff would be entitled beyond all question to recover a substantial sum on the basis of an implied agreement to pay. In this class of cases, however, the policy of our laws requires clear and convincing testimony that it was the understanding of both parties that the decedent was obligated to and would pay for the services, and that the services were rendered pursuant to such an understanding.

There was certainly sufficient evidence on this head to take the case to the jury.

Elizabeth Hansell talked with decedent repeatedly during the rendition of these services, generally two or three times a year. Decedent said to her: "I shall pay her well for what she is doing. I will make her so comfortable that she will never have to work." While this may be consistent with a mere general declaration of intention to take care of the plaintiff by will, it

is not only a plain statement that decedent would *pay* plaintiff for her services but is the clearest kind of recognition of her obligation to do so growing out of the arduous and unusual services rendered by the plaintiff. On cross-examination this witness related a conversation in 1909, when decedent complained of a nurse she had had and said: "I have one now that just suits me and I am going to keep her." The inference of obligation to pay is clear from this. How could she *keep* a nurse for five years, doing this kind of work and having only one day off a week, without obligating herself to pay for the services?

Amelia Hudson testified that decedent said to her: "'What could I do without Kate?' I said, 'Yes, she has been a faithful nurse to you night and day;' and she repeated to me, 'Well, she will be well paid for all she has done for me.'"

Several other witnesses testified to conversations with decedent in which she recognized her obligation to the plaintiff and expressed her intention to discharge it, but these conversations tend to indicate that the decedent was expecting to discharge the obligation by a suitable bequest in her will.

There are arguments of considerable force that may be properly addressed to a jury, which may be said to throw some doubt on plaintiff's claim — notably the fact of actual payment during the last year and a half and the fact that plaintiff was working with her sister in the boarding house where the decedent was paying a round price for mere board and lodging. However, considering the peculiarly arduous and disagreeable character of these services and the long time during which they were performed, it is hardly conceivable that they would have been rendered without a mutual understanding and agreement that they would be actually paid for. At any rate, the testimony above quoted, showing actual statements by decedent that she would *pay*, coupled with all of the circumstances disclosed by the evidence, required the submission of the case to the jury.

A favorable impression is created by the fact that plaintiff's sister did not attempt to bolster up the claim by testifying to any hard and fast agreement of decedent to pay. This tends to stamp the claim as a genuine one.

The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

SCOTT and DAVIS, JJ., concurred; CLARKE, P. J., and LAUGHLIN, J., dissented.

CLARKE, P. J. (dissenting):

I dissent. It appears that the decedent lived from before 1908, down until her death on June 20, 1915, continuously in boarding houses kept by the plaintiff's sister under an agreement that the decedent should pay fifty dollars per week for her rooms and board including the serving of her meals in her room, and that the decedent paid plaintiff's sister for her board according to and under that agreement during all the time the decedent boarded with her. The plaintiff lived with her sister, the keeper of a boarding house, and worked for her. Beginning in December, 1913, the plaintiff was paid for her services by the decedent down to the time of decedent's death, that is, over a period of a year and one-half, at the rate of fifty dollars a month, and her sister was paid fifty dollars a week for the board of the decedent and also nine dollars a week, the wages of a servant to take plaintiff's place in the kitchen.

No claim is made here for payment of plaintiff's services during said period of a year and one-half and it does not appear that any claim for the payment of services beyond the amount paid to plaintiff's sister during the period prior to the last year and one-half was ever presented during the lifetime of the decedent. It seems incredible that if there had been an express contract to pay for such services extending over such a long period of time no claim should have been put in and no settlement had and no amounts paid. Giving the testimony as to the casual talks of the decedent with the various ladies who have testified the full effect which we are allowed to under the well-established authorities I think they indicate merely an intention upon the decedent's part to make plaintiff a gift, or to remember her in her will, which intention was not carried out.

The fact that plaintiff was fully paid upon an established contract for the last year and one-half of the decedent's life satisfies me that no previous contract had been entered into. The cases are numerous which hold that claims against

estates resting on oral evidence are under suspicion from the outset and all the more so when old and stale. They have to be proved by clear and most convincing evidence of disinterested and unbiased witnesses before they can be allowed. If the evidence does not come up to this standard the case is not one for the jury. A few of such cases are, *Kearney* v. *McKeon* (85 N. Y. 136); *Matter of Van Slooten* v. *Wheeler* (140 id. 624); *Dueser* v. *Meyer* (129 App. Div. 598); *Butcher* v. *Geissenhainer* (125 id. 272); *Matter of Dole* (168 id. 253); *Matter of Doubleday* (173 id. 743).

In my opinion the complaint was properly dismissed, and the judgment appealed from should be affirmed.

LAUGHLIN, J., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.